IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALCOA, INC. (f/k/a Aluminum Company of America), and affiliated corporations, ) ) ) Plaintiff, ) ) v. ) ) UNITED STATES OF AMERICA, ) ) Defendant. ) | 02: 03cv0626 |

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently before the Court are the parties' cross motions for summary judgment. On October 20, 2005, the Court heard oral argument from counsel on these motions. At the hearing, all parties were represented by counsel who presented and argued the issues skillfully and effectively. For the reasons that follow, the motion for summary judgment filed by Alcoa, Inc. (f/k/a Aluminum Company of America), and affiliated corporations, will be denied and the motion for summary judgment filed by the United States of America will be granted.

### BACKGROUND

Alcoa, Inc. (f/k/a Aluminum Company of America), and affiliated corporations, ("Alcoa") is seeking a total tax refund from the government of $12,575,164, plus applicable interest, which it claims resulted from the overstatement of its gross income in federal tax returns from 1940-1987. The manufacturing operations conducted by Alcoa generate waste byproducts, which are disposed of in the ordinary course of business. The costs of disposing of these waste byproducts ("waste disposal costs") include the cost of direct labor for plant employees who participate in the waste disposal process and the cost of third-party contractors

hired to dispose of waste byproducts. During the tax years 1940-1987, Alcoa included its waste disposal costs in the computation of its costs of goods sold for both financial accounting and federal income tax purposes.

During its 1993 tax year, Alcoa was required by state and federal authorities, including the federal Environmental Protection Agency ("EPA"), to conduct environmental remediation activities with respect to waste byproducts generated in the 1940-1987 tax years. For federal income tax purposes, Alcoa was entitled to deduct a significant portion of these costs.

Alcoa argues that had it incurred these environmental remediation costs in the 1940-1987 tax years (during the actual tax years when the waste byproducts were generated), its waste disposal costs, and consequently its cost of goods sold, would have been higher for such years. As a result, its gross income, which is computed as gross receipts less costs of goods sold, would have been lower for such years. "In other words, the gross income Alcoa reported during the 1940-1987 years was overstated because its waste disposal costs, and thus its cost of goods sold, were understated." Alcoa Memo. at 6. Alcoa sought a refund of the allegedly excess taxes it paid during those years, but the Internal Revenue Service ("IRS") refused its claims.[1]

According to Alcoa, if it treats the environmental remediation costs as deductible in the tax year 1993 rather than allocable to the years 1940-1987, Alcoa will not receive the full

---

[1] The record reflects that Alcoa submitted an informal claim for refund to the Internal Revenue Service for 1993 based upon the application of § 1341 for the environmental remediation expenses incurred in that year. The IRS disallowed the claim on February 9, 2001 and Alcoa thereafter exhausted its administrative remedies.

tax benefit of its costs as a result of the differences in tax rates during the relevant years. According to Alcoa, the corporate "tax rates in effect during the 1940-1987 tax years were generally substantially higher than the tax rate in effect during tax year 1993."

Alcoa argues that the Internal Revenue Code, and specifically 26 U.S.C. § 1341, provides a remedy for the "inequity" caused by the timing differences in the tax rates. Alcoa insists that the application of § 1341 in this case would allow Alcoa to claim a deduction in the tax year 1993 at the same tax rate as that which Alcoa paid on the underlying gross income it reported in the years 1940-1987. Alcoa argues that the holding in *Pennzoil-Quaker State Co. v. United States*, 62 Fed. Cl. 689 (2004), is exactly on point and should control the outcome of this case.

Not surprisingly, the United States of America does not agree. In support of its position, it relies upon IRS Revenue Ruling 2004-17, issued on February 6, 2004, which states that amounts paid or incurred in the current taxable year to remediate environmental contamination that occurred in prior taxable years do not qualify for treatment under § 1341. Further, the United States argues that Alcoa's reliance on the decision in *Pennzoil-Quaker State Co.* is misplaced and, therefore, should not control the outcome of this case. Rather, the United States argues that the holding in *Reynolds Metal Co. v. United States,* 389 F. Supp.2d 692 (E.D. Va. 2005), is directly on point and should be adopted by this Court.

### STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 197 (3d Cir. 1994). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 ( 1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir. 1982). Once the moving party has satisfied its burden, the nonmoving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 257. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

In a tax refund suit, the taxpayer has the burden of proof as to the taxpayer's claim. *Psaty v. United States*, 442 F.2d 1154, 1160-61 (3d Cir. 1971). When the IRS assesses a tax, a rebuttable presumption arises that the assessment is correct*. Anastasato v. IRS*, 794 F.2d 884,

886 (3d Cir. 1986). "This presumption is a procedural device that places the burden of producing evidence to rebut the presumption on the taxpayer." *Id.*

## DISCUSSION

Section 1341 provides that if -

"(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable years shall be the lesser of the following:

(4)  the tax for the taxable year computed with such deduction; or

(5) an amount equal to

(A)  the tax for the taxable year computed without such deduction, minus

(B)  the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years)."

26 U.S.C. § 1341(a)(1995).  Section 1341 also contains an "inventory exception" to the general rule.  According to the inventory exception, section 1341(a)

> does not apply to any deduction allowable with respect to an item which was included in gross income by reason of the sale or other disposition of stock in trade of the taxpayer (or other property of a kind which would properly have been included in the inventory of the taxpayer if on hand at the close of the prior taxable year) or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. . . .

26 U.S.C. § 1341(b)(2).

Alcoa argues that it meets all of the requirements of subsection (a). First, the United States has stipulated that Alcoa's deduction for environmental remediation expenses exceeded $3,000 in tax year 1993. Next, Alcoa claims that it overstated its gross income from the sale of aluminum products in tax years 1940-1987 because its waste disposal costs were understated for such years. Third, Alcoa claims that in tax year 1993 it is established that Alcoa did not have an unrestricted right to the income it claims during the 1940-1987 tax years because of the significant additional sums it was required to expend for environmental remediation activities with respect to waste byproducts generated in the 1940-1987 time period. *See* Alcoa Memo. at 9. Finally, Alcoa insists that the inventory exception does not apply in this case "because that exception is limited to items such as sales returns and allowances, which do not include the environmental remediation costs at issue here." *Id.* at 9-10.

The government contends that § 1341 does not apply to the deductions for the environmental remediation costs claimed by Alcoa for a number of reasons. First, Alcoa cannot identify any item that was included in gross income in a prior year and/or Alcoa cannot show that such item was included in gross income under an apparent claim of right, rather than an absolute right. Therefore, Alcoa cannot meet the requirements of § 1341(a)(1).

Next, to satisfy § 1341(a)(2), the deduction must be allowable because an item received and included in gross income in a prior year has been restored in a subsequent year to its rightful owner. *Chernin v. United States,* 149 F.3d 805, 816 (8th Cir. 1998). The government argues that the environmental remediation expenditures incurred by Alcoa is not a restoration and, thus, § 1341(a)(2) does not apply.

Last, the government argues that assuming, *arguendo*, that Alcoa meets the statutory requirements of § 1341(a), it still cannot prevail because the inventory exception rule of § 1341(b)(2) precludes recovery. Section 1341 does not apply to any deduction attributable to an item which was included in gross income by reason of the sale or disposition of stock in trade, inventory, or property held primarily for sale to customers. § 1341(b)(2); Trea. Reg. § 1.1341-1(f)(1). Therefore, should this Court find that Alcoa's gross income was overstated in prior years because the cost of goods sold was understated by the amount of the environmental remediation expenditures, then Alcoa's claimed deductions under § 1341(a)(2) are attributable to the prior sale of products to customers in the ordinary course of business and § 1341 does not apply.

Although this is an issue of first impression in this circuit, the Court is persuaded by the logic and reasoning of Judge James R. Spencer of the United States District Court for the Eastern District of Virginia, Richmond Division, in the *Reynolds Metals Company v. United States of America* case, 389 F. Supp.2d 692 (E.D. Va. 2005). In that case, Judge Spencer, in a thoughtful and well-reasoned opinion, examined the history, rationale, and purpose of § 1341 and concluded that later-incurred environmental remediation costs were not an allowable deduction with regard to past sales, the identical issue presented in the instant litigation.

The facts, issues, and arguments in *Reynolds* are virtually identical to those in this case, as stipulated by counsel at argument. In 1999, Reynolds filed refund claims for 1992-1995 totaling $22.3 million, citing § 1341 in an attempt to recoup taxes paid during the years 1940-1987. Reynolds argued that from 1940 through 1987 it used waste disposal practices in connection with its aluminum manufacturing operations that met prevailing standards. In the

years 1992 through 1995, Reynolds incurred substantial environmental remediation costs in an effort to remediate contaminated areas, which resulted from its prior waste disposal practices.

The court in *Reynolds* determined, however, that Reynolds' claim was "fundamentally at odds with what a taxpayer should expect to gain from section 1341 because Reynolds did not restore or repay an item previously included in gross income when it incurred environmental remediation costs from 1992 to 1995." *Reynolds*, 389 F. Supp.2d at 704.

As an alternative basis for its decision, the *Reynolds* court found that it did not "need to reach the issue of whether the inventory exception bars Reynolds' claim because Reynolds has not demonstrated that it is entitled to relief under subsection (a) of section 1341. However, the Court notes that Reynolds would have this Court classify its prior disposal costs as inventorable and included in the costs of goods sold but refrain from applying the inventory exception under § 1341(b)(2)." *Id*. at 703.

This Court agrees with the decision and reasoning employed by Judge Spencer in *Reynolds* and, therefore, adopts and incorporates said opinion and holding as the opinion of this Court. The Court finds and rules that Alcoa cannot establish that the environmental remediation costs it incurred in 1993 is an allowable deduction for an item of income over which it appeared to have an unrestricted right as required by § 1341(a). Accordingly, the Court will deny Alcoa's Motion for Summary Judgment and grant the United States' motion because it is entitled to judgment as a matter of law.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALCOA, INC. (f/k/a Aluminum Company of America), and affiliated corporations,<br><br>            Plaintiff,<br><br>            v.<br><br>UNITED STATES OF AMERICA,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   02: 03cv0626<br>)<br>)<br>)<br>)<br>) |

**ORDER OF COURT**

AND NOW, this 23rd day of December, 2005, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1.    The Motion for Summary Judgment filed by Alcoa, Inc. (f/k/a Aluminum Company of America), and affiliated corporations *(Document No. 22)* is **DENIED**; and

2.    The Cross Motion for Summary Judgment filed by the United States of America (*Document No. 27*) is **GRANTED**.

The Clerk of Court is directed to mark this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: John C. Cleary, Esquire
Lauren E. Lindh, Esquire
Gary P. Connelly, Esquire
LeBoeuf, Lamb, Greene & MacRae
Email: gconnelly@llgm.com

Natalie Hoyer Keller, Esquire
Catherine A. Lapides, Esquire
Todd F. Maynes, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Michael J. Martineau, Esquire
United States Department of Justice
Email: michael.j.martineau@usdoj.gov

Paul E. Skirtich,
Assistant U.S. Attorney
United States Attorney's Office
Email: paul.skirtich@usdoj.gov